## SCHMIDT v. MOORE (NEW YORK CASUALTY CO. et al., Interveners).

### No. 5571.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1938.

Harry V. Booth and Jackson & Mayer, all of Shreveport, for appellants.

Foster, Hall, Barret & Smith, Blanchard, Goldstein, Walker & O'Quin, and Wise, Randolph, Rendall & Freyer, all of Shreveport, for appellees.

DREW, Judge.

On October 9, 1936, plaintiff was driving a pick-up delivery truck for his employer, Lyles Linen & Supply Service.

Just prior to the accident, he was driving the said vehicle east on Barksdale boulevard (Main street) of the town of Bossier City, La.

At the same time, a truck owned by the defendant and driven by one of its employees was proceeding west on the same avenue.

A collision occurred between the two vehicles on said Barksdale boulevard near its intersection with Bennett street which crosses the former at right angles near a filling station and tire shop known as the "Modern Retreading Company."

The plaintiff charges as an act or acts of negligence that defendant driver, when about to pass the vehicle plaintiff was driving, made a left turn out of his lane of traffic from behind another truck, and in so doing crossed the black center stripe of said highway, directly into the path of plaintiff's approaching vehicle, whereupon the negro driver, observing that he did not have room to pass, attempted to swerve and return his vehicle to the right or north side of the highway and was successful in returning the front part of said vehicle but a part of the body overhung the center stripe and sideswiped the vehicle driven by plaintiff, and at the same time struck plaintiff's left arm, crushing, mangling, and breaking it in thirty-eight places from the shoulder to the wrist.

Plaintiff alleges further that the negro driver, at the time, was acting within the scope of his employment in that he was

transferring, accepting, or delivering freight for the benefit of defendant.

Plaintiff then itemizes his damages as follows:

(a) Pain and suffering—past, present and future, the sum of ...................... $ 2,000.00

(b) Permanent loss of said left arm, the sum of........:...... 8,000.00

(c) Loss of earnings and reduction of earning capacity —past, present and future, the sum of................ 10,000.00

(d) Hospital, doctor bills, special nurses, medicine and miscellaneous expenses as a result of said accident, the sum of ....·.............. 750.00

Total ............... $20,750.00

Plaintiff also alleges that at the time of the accident he was earning the sum of $35 per week as a driver and solicitor for his employer, and that, because of his arm injury, he could no longer drive a motor vehicle, and, as a result, he would be prevented from earning a livelihood; that he had no other trade or occupation and no other means of earning a living.

The supplemental and amended petition filed by plaintiff joined as party defendants the Texas & Pacific Railway Company, but, since a nonsuit was entered as to these defendants, it is unnecessary to set forth the allegations of this petition.

The defendant Moore answered, denying all the material allegations of plaintiff's petition, alleging in the first alternative that the accident was due solely to the negligence of plaintiff and in the second alternative that if it be held that the negro driver was in the employ of defendant Moore that plaintiff was negligent to the extent that without such negligence on his part no accident would have occurred; and, in connection with the second alternative plea, defendant avers:

That two motor vehicles, at or about the time of the accident, were occupying and proceeding along the east-bound side of the street to a point close to the center line thereof when plaintiff attempted to overtake and pass said vehicles, by suddenly driving across the center line of the said street, immediately into and against the motortruck with which he collided. That at the time plaintiff was driving at an excessive rate of speed—40 miles per hour. That plaintiff,

when overtaking the two vehicles aforesaid, and in turning across the center line of the street, failed to look for traffic approaching westbound. And at the same time, he placed his left arm over the edge of the left door of the cab of the truck which he was driving and kept his arm in that position up to the very moment of the collision. And that the foregoing acts or omissions were the proximate cause of the accident and plaintiff's injury without which no accident would have occurred. A reservation is then contained in the answer against the Texas & Pacific Motor Transport Company and the Texas & Pacific Railway Company.

New York Casualty Company alleges payment of compensation to plaintiff, hospital and medical expense, and prays to be recognized in any judgment rendered in favor of plaintiff to the sum of $670, plus a reasonable attorney's fee, and this to be paid by preference and priority out of any damages recovered from the defendant.

An answer was filed to the intervention by plaintiff and defendant, admitting substantially the averments of said intervention.

The lower court rejected the demands of both the plaintiff and intervener and they have perfected this appeal.

A determination of one question of fact will decide the case; that is, whether the plaintiff's car or the defendant's truck was on its left side of the center line of the street at the time of the collision. This is the only issue necessary to determine.

The record consists of 292 pages of pleadings and testimony. We have carefully studied it and are unable to come to a conclusion different from that arrived at by the lower court. The preponderance of the testimony of the eyewitnesses to the accident is that plaintiff, in attempting to pass cars preceding his car, cut his vehicle to the left of the center of the street and collided with the truck owned by defendant. A review in this opinion of the lengthy testimony of each witness on this point would be of value to no one. We have given careful study to the contention of plaintiff and intervener that the physical facts corroborate the testimony of plaintiff and make defendants' witnesses' version of the collision impossible. We are unable to find any more corroboration of the plaintiff's testimony by applying the physical facts than we are of the defend-

228

ants' witnesses' testimony. If plaintiff cut to the left of the center, then attempted to swerve back to his right, the cars would have been in the same relative positions as if defendant had cut to his left of the center line and attempted to swerve back to the right. It would have been the natural and reasonable thing for either of them to do; that is, to have tried to get back to their respective right sides of the street when they saw a collision was inevitable if they continued as they were going. The fact that a pencil and part of a wrist watch, which were on the person of plaintiff just prior to the accident, were found on plaintiff's right side of the highway after the accident, can have little weight in face of the positive testimony of the four or five eyewitnesses who testified he was traveling on his left side of the center of the street at the time of the accident. These small objects could have been thrown where they were found when they were jerked off of plaintiff by the moving truck. There are many ways in which these articles could have been where they were found and not have been there immediately after the accident.

For us to reverse the lower court on its finding of facts we would have to reject as unworthy of belief all the testimony of the eyewitnesses other than plaintiff and accept his testimony alone as being correct. We have no good reason for rejecting the testimony of these witnesses. The lower court undoubtedly believed them, and it was in a better position to pass upon their veracity than we are.

We find no error in the judgment of the lower court, and it is affirmed, with costs.